**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ISAAC NARANJO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-1983 |
| | ) | |
| v. | ) | District Judge Christy Criswell Wiegand |
| | ) | Magistrate Judge Maureen P. Kelly |
| UNIT MANAGER COULEHAN *et al.*, | ) | |
| | ) | Re: ECF No. 23 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

Plaintiff Isaac Naranjo ("Plaintiff") is a prisoner incarcerated in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Frackville ("SCI-Frackville").[1] He brings this *pro se* action challenging the conditions of his confinement in the Management Control Unit ("MCU") at the State Correctional Institution at Greene ("SCI-Greene"). Plaintiff also brings claims against prison officials and Pennsylvania Parole Board members for failing to support or grant parole. ECF No. 10. Naranjo alleges that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments, and violated DOC policies and procedures.

Plaintiff identifies as Defendants DOC Unit Manager Coulehan ("Coulehan"), L-Unit Counselor Hurd ("Hurd"), L-Unit Psychology Services Specialist Wittman ("Wittman"), SCI – Greene Deputy Superintendent Buzas ("Buzas"), SCI-Greene inmate treatment and program

---

[1] Plaintiff's underlying criminal docket reflects that as of April 30, 2024, he is incarcerated at SCI-Frackville. See Commonwealth v. Naranjo, No. CP-51-CR-0212551-2002, at 4 (Ct. Common Pleas Phila.) (last checked Oct. 31, 2024) https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0212551-2002&dnh=EhweAQ0pV%2B5N2%2Br9NZDTFw%3D%3D Based on an evident change in his location, the Court ordered Plaintiff to update his address. ECF No. 25. Plaintiff complied and filed a Notice of Change of Address on October 22, 2024. ECF No. 36.

director Carla Swartz ("Swartz"),  SCI-Greene Superintendent Zaken ("Zaken"), Parole Agent Cook ("Cook"), Parole Supervisor Darr ("Darr"), DOC Secretary Laurel Harry ("Harry"), and DOC Deputy Secretary for Institutional Operations Tammy Ferguson ("Ferguson") (collectively, "Defendants"). ECF No. 24 ¶¶ 2-13.

Defendants present a Motion to Dismiss all claims for failure to state a claim. ECF No. 23. For the following reasons, it is respectfully recommended that the Court grant the Motion to Dismiss.

## II.    REPORT

### A.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was transferred from the State Correctional Institution at Phoenix ("SCI-Phoenix") to SCI-Greene on September 15, 2022. ECF No. 10 at 4. Prior to transfer, Plaintiff was housed in administrative custody in the SCI-Phoenix Restricted Housing Unit ("RHU").[2] Upon arrival at SCI-Greene, he was placed in the MCU. As described in the SCI-Greene MCU Inmate Handbook:

> [t]he purpose of this unit is to provide long-term housing for high security risk inmates who best benefit from controlled movements, closely supervised out-of-cell (OOC) activities and privileges delivered on the specialized general population housing unit. Inmates housed on the MCU will not be on RRL, Disciplinary Custody (DC) or Administrative Custody (AC). All services are provided to MCU inmates on the unit. If an MCU inmate must be removed from the unit, they shall be escorted and restrained. Placement of an inmate on the MCU will be determined by the Executive Deputy Secretary for Institutional Operations (EDSI) and the Secretary of Corrections. An inmate may not be permanently reassigned from the MCU without written approval from the EDSI and/or Secretary.

ECF No. 32-1 at 4; see also Naranjo v. Little, No. 22-1890 (W.D. Pa. 2022) (ECF No. 54 at 3-4).

---

[2] See Naranjo v. Little, No. 22-1890 (W.D. Pa. 2022) (ECF No. 54 at 3).

The instant case is Plaintiff's second lawsuit challenging his confinement in SCI-Greene's MCU and the denial of institutional support for immediate parole. See Naranjo v. Little, No. 22-1890 (ECF No. 40). This case also follows two prior lawsuits challenging unfavorable parole recommendations and Plaintiff's confinement in a Special Management Unit at SCI-Rockview and the RHU at SCI-Houtzdale. See Naranjo v. Walter, No. 20-918, 2022 WL 17627762 (M.D. Pa. Dec. 13, 2022), aff'd Naranjo v. Walter, No. 22-3435, 2023 WL 5928506 (3d Cir. Sept. 12, 2023); Naranjo v. Ivicic, No. 21-72, 2023 WL 3571143 (W.D. Pa. Apr. 28, 2023); aff'd Naranjo v. Ivicic, No. 23-1974, 2024 WL 3534481 (3d Cir. Jul. 25, 2024).

In the earlier cases, Plaintiff claimed that his housing placement and the denial of institutional support for parole were in retaliation for grievances and litigation that Plaintiff filed against DOC employees. In each case, the district court concluded that Plaintiff's housing served legitimate penological purposes to address Plaintiff's chronic and serious behavioral issues. And, when placed at issue, the district court held that parole decisions were based on legitimate factors unrelated to Plaintiff's grievances and litigation.[3] On appeal, the United States Court of Appeals for the Third Circuit affirmed each ruling the for the reasons stated by the district court. Naranjo v. Ivicic, 2024 WL 3534481; Naranjo v. Walter, 2023 WL 5928506.

---

[3] The docket and related litigation of Plaintiff's underlying criminal proceedings reflect that in 2003, a jury convicted Plaintiff of aggravated assault, simple assault, recklessly endangering another person, burglary, criminal trespass, possessing an instrument of crime, terroristic threats, and contempt of court for violating a protection from abuse order. Specifically, Plaintiff was convicted of repeatedly stabbing his ex-girlfriend in the face, neck, head, and shoulder with a box cutter. Naranjo v. Coleman, No. 13-7383, 2017 WL 10832103, at *1 (E.D. Pa. Aug. 10, 2017), report and recommendation adopted, No. CV 13-7383, 2019 WL 632137 (E.D. Pa. Feb. 14, 2019); Com. v. Naranjo, No. 227 EDA 2015, 2016 WL 1436365, at *1 (Pa. Super. Ct. Apr. 12, 2016). After a series of appeals, "the trial court structured [Plaintiff's] sentencing term in the following manner: ten to 20 years in prison for attempted murder; a concurrent term of ten to 20 years in prison for aggravated assault; a consecutive term of ten to 20 years in prison for burglary; a consecutive term of two-and-a-half to five years in prison for PIC; and, a consecutive term of two-and-a-half to five years in prison for terroristic threats." Com. v. Naranjo, 2016 WL 1436365, at *1.

In this case, Plaintiff repackages his retaliation and conditions of confinement claims and brings the following causes of action against Defendants.

| Count I (¶ 49) | First Amendment retaliation – denial of support for parole in retaliation for lawsuit filed at No. 22-1890 | Defendants Coulehan, Wittman, Buzas, Swartz, and Zaken |
|---|---|---|
| Count II (¶¶ 50) | First Amendment retaliation – issuance of a false misconduct in retaliation for lawsuit and grievances | Defendants Hurd and Coulehan |
| Count III (¶ 51) | First Amendment retaliation – providing reports to parole officers of institutional misconduct and failure to complete programming | Defendants Hurd, Coulehan, Wittman, Buzas, Swartz, and Zaken |
| ** (¶ 52)[4] | First Amendment – conspiracy to retaliate against Plaintiff by denying parole based on false information. | Defendants Cook, Darr, unnamed members of Parole Board, Coulehan, Hurd, Wittman, Buzas, Swartz, and Zaken |
| Count IV (¶¶ 54-57) | Eighth Amendment – failure to provide access to exercise equipment and placement in "solitary confinement." | Defendants Coulehan, Buzas, Swartz, Zaken, Harry, and Ferguson |
| Count V (¶¶ 59-62) | Fourteenth Amendment – procedural due process claim for failing to provide a process to challenge placement in MCU | Defendants Harry and Ferguson |
| Count VI (¶¶ 63-68) | Fourteenth Amendment – substantive due process claim for denial of parole based on false information | Parole Board Defendants |
| Count VII (¶¶ 70-85) | Fourteenth Amendment – substantive due process and equal protection claims based on conditions of confinement in the MCU | Defendants Harry, Ferguson, Zaken, and Swartz |
| ** (¶¶ 83-85)[5] | Violation of DOC policies related to denial of parole support and denial of general population privileges | Defendants Coulehan, Hurd, Wittman, Buzas, Swartz, Zaken, Harry, and Ferguson |

Plaintiff seeks compensatory and punitive damages as well as various forms of preliminary and permanent injunctive relief including placement in general population, limitations on

---

[4] Plaintiff identifies three First Amendment retaliation claims but his Complaint appears to lodge a claim for conspiracy, which the Court addresses in an abundance of caution. ECF No. 10 at 18-19.

[5] The Court treats the allegations in paragraphs 83-85 as a separate claim.

placement in alternative housing units, an end to retaliation, and removal of his institutional record. Id. at 24-25.

Defendants filed a Motion to Dismiss all claims against all parties, and a brief in support. ECF Nos. 23, 24. Plaintiff filed a brief in opposition and a motion requesting that the Court deny Defendants' Motion to Dismiss. ECF Nos. 31 and 32.

The Motion to Dismiss is ripe for consideration.

### B.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"To determine the sufficiency of a complaint, a court must take three steps. First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011), *as amended* (June 6, 2011) (quoting Iqbal, 556 U.S. at 675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Third, 'whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" Id. (citations omitted). If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the court should deny the motion to dismiss. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

Because Naranjo is proceeding *pro se*, his filings are construed liberally. <u>Vogt v. Wetzel</u>, 8 F.4th 182, 185 (3d Cir. 2021) (citing <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 244–45 (3d Cir. 2013). "This means [the Court] remain[s] flexible, especially 'when dealing with imprisoned *pro se* litigants'" like Naranjo. <u>Id.</u> "Yet '*pro se* litigants still must allege sufficient facts in their complaints to support a claim. And "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." <u>Id.</u> (internal citation omitted).

C.     **DISCUSSION**

1.     **Official Capacity Claims**

Defendants move to dismiss Plaintiff's claims against the individual defendants in their official capacities based on Eleventh Amendment immunity. ECF No. 24 at 4-6. Plaintiff responds that he seeks prospective declaratory and injunctive relief that is not precluded by the Eleventh Amendment. ECF No. 32 at 3.

Upon review, the Court finds that Plaintiff's official capacity claims for monetary relief are barred and his claims for injunctive relief are moot because he is no longer incarcerated at SCI-Greene or in the MCU.

"The Eleventh Amendment of the United States Constitution states: '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' It imposes a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court, or against a state official in his or her official capacity." <u>Durham v. Kelley</u>, 82 F.4th 217, 227 (3d Cir. 2023) (citations omitted).

In an official-capacity suit against individual defendants, the entity of which the defendant is an agent is the real party in interest. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985). As a result,

claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 318 (3d Cir. 2013); Nelson v. Com. of Pa. Dep't of Pub. Welfare, 244 F. Supp. 2d 382, 391 (E.D. Pa. 2002).

Such immunity is not absolute, however, and is "subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

Upon review, the Court should dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities. It is undisputed that the Eleventh Amendment bars these claims, and no exception to immunity applies. See O'Hara v. Ind. Univ. of Pa., 171 F. Supp. 2d 490, 495 (W.D. Pa. 2001) ("The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases (42 Pa. C.S.A. § 8521) and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983."); Spada v. Klemm, No. 1:22-cv-00478, 2023 WL 2290258, at *6 (M.D. Pa. Feb. 28, 2023) (RLUIPA claims for damages against state officials in their official capacities are barred by the Eleventh Amendment).

 Furthermore, Plaintiff's official capacity claims for prospective injunctive or declaratory relief should be dismissed as moot because Plaintiff has been transferred from SCI – Greene (the site of the aggrieved conduct) to SCI – Frackville. ECF No. 36. Under these circumstances, Plaintiff no longer presents a live case or controversy for injunctive relief regarding alleged retaliation,  his conditions of confinement, or the policies or practices at SCI – Greene. Thus, dismissal of his demand for injunctive relief is warranted "because an injunction where he is no longer imprisoned would not provide him meaningful relief." Banks v. Sec'y Pennsylvania Dep't

of Corr., 601 F. App'x 101, 103 (3d Cir. 2015) (citing Abdul–Akbar v. Watson, 4 F.3d 195, 206–07 (3d Cir. 1993)).

### 2.    Personal Involvement

Defendants move to dismiss all claims against Defendants Darr, Cook, Swartz, Harry, and Ferguson because Plaintiff fails to allege any facts to establish that these Defendants were personally involved in any alleged misconduct. ECF No. 24 at 6-9.

In the Complaint, Plaintiff alleges that Darr, a parole supervisor, and Cook, a parole agent, retaliated against him by failing to grant or recommend parole because he filed litigation and grievances against other DOC and prison officials and employees. ECF No. 10 at 9-11, 19. Plaintiff asserts that prior to his parole hearing on July 31, 2023, Defendants Hurd, Coulehan, Zaken, Buzas, and Swartz told Plaintiff they would make sure he was denied parole because he filed grievances and a lawsuit against Buzas, Zaken, Swartz, Little, and Bickel. Id. at 8, 9. On the day of the hearing, Plaintiff claims he observed Zaken, Buzas, Swartz, Coulehan, and Hurd speaking with Darr. Id. at 10. Thus, Plaintiff concludes that both Cook and Darr were aware of Plaintiff's litigation and grievances and retaliated against him by disregarding his complete parole packet including his statements that he had remorse for his crimes and accepted responsibility for his conduct. Id. at 10, 19. Plaintiff also contends that among others, Swartz, Cook, and Darr conspired with the Coulehan, Zaken, Hurd, and Buzas to retaliate against him and deny him parole. Plaintiff separately alleges that Swartz is responsible for the denial of programs to inmates housed in the MCU. Id.

As to DOC Secretary Harry, Plaintiff asserts that she determines all policies and procedures related to the operation of SCI – Greene's MCU, including the alleged unconstitutional use of long-term solitary confinement. Id. at 4. Plaintiff claims that Deputy Secretary Ferguson is responsible for identifying inmates who will be housed in the MCU and whether and when they

qualify to be released to general population. Id. Defendants Harry and Ferguson also determine the restrictions and privileges afforded MCU inmates. Thus, Plaintiff claims that Harry and Ferguson participate in the creation and maintenance of unconstitutional conditions of confinement. Id. at 4, 12-16, 22-24.

To establish individual liability under section 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)." "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. For a supervisor, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2017), *rev'd on other grounds*, Taylor v. Barkes, 575 U.S. 822 (2015). First, a supervisor may be held liable if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129 & n. 5 (3d Cir. 2010) (citing A.M. ex rel. J.M.K. Luzerne Cnty., 372 F.3d 572, 586 (3d Cir. 2004)). Second, a supervisor may be liable if he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586.

Construing Plaintiff's *pro se* Complaint liberally, he sets forth sufficient facts to support his claim that Cook, Darr, and Swartz personally participated in alleged retaliation by recommending the denial of parole. As to Swartz, Harry, and Ferguson, Plaintiff alleges that each participated in the creation of MCU policies and procedures that violate the Eighth Amendment. Thus, he sufficiently alleges the personal participation of each identified Defendant. The Motion

to Dismiss should be denied on the basis of personal involvement at this initial stage of the litigation.

### 3.    First Amendment – Retaliation Claims

Plaintiff alleges that on May 2, 2023, Unit Manager Coulehan and Counselor Hurd interviewed Plaintiff and asked him to provide information related to his underlying criminal charges. ECF No. 10 at 8. Days later, Coulehan told Plaintiff that based on the information provided, he would not receive jail support for parole. Plaintiff expressed his displeasure and, as alleged, Coulehan told Plaintiff that because of his pending lawsuit against prison officials, he would never receive jail support for parole. Id. Plaintiff claims he told Coulehan he would be filing a grievance against him. Superintendent Zaken and Deputy Superintendent Buzas allegedly told Plaintiff that in concert with Coulehan, Hurd, Wittman, and Swartz, they would ensure that Plaintiff would not gain jail support for parole.

On July 3, 2023, Coulehan and Hurd issued Plaintiff a misconduct for indecent exposure. Id. at 9. Plaintiff claims that the charge is false and was lodged in retaliation for his grievance against Coulehan and his 2022 lawsuit against Zaken, Buzas, and Swartz. "[D]ays later," a hearing examiner dismissed the misconduct. Id.

On July 31, 2023, Plaintiff attended his parole hearing. Id. at 9-10. Prior to entering the meeting room, Plaintiff claims he observed Zaken, Buzas, Swartz, Coulehan, and Hurd speak with Darr. During the meeting, Plaintiff answered questions related to his underlying criminal charges, admitted guilt, and expressed remorse. On August 7, 2023, Plaintiff learned that parole was denied, but would be reconsidered. Id. at 10. The Parole Board stated that it denied parole for several reasons including Plaintiff's need to participate in and complete institutional programs, a "risk and needs assessment indicating [his] level of risk to the community," DOC's negative

recommendation, his "failure to demonstrate motivation for success, [his] minimization/denial of the nature and circumstances of the offense(s) committed, [his] refusal to accept responsibility for the offenses committed, [his] lack of remorse for the offenses committed, [and] the existence of [an] ICE detainer." Id. at 10-11.

Plaintiff alleges that despite the many reasons identified in the letter, the Parole Board arbitrarily denied him parole and considered impermissible factors. He claims Coulehan, Hurd, Wittman, Buzas, Swartz, Zaken, Cook, Darr, and the unnamed members of the Parole Board knew of his lawsuit and grievances and retaliated against him by denying parole. Id.

Based on these allegations, Plaintiff presents First Amendment retaliation claims for the denial of institutional support for parole, the issuance of a false misconduct, and working in concert to deny him parole. ECF No. 10 at 18-19.

In order to establish a *prima facie* claim for retaliation under the First Amendment, Plaintiff must show: (1) that "the conduct which led to the alleged retaliation was constitutionally protected"; (2) "he suffered some 'adverse action' at the hands of the prison officials" that "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) a "causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). If Plaintiff makes this initial showing, "the burden then shifts to the prison official to prove that the same decision would have been made absent the protected conduct for reasons reasonably related to a legitimate penological interest." DeFranco v. Wolfe, 387 F. App'x 147, 154-55 (3d Cir. 2010) (citing Rauser, 241 F.3d at 334).

### a. Protected activity

There is no dispute that Plaintiff engaged in protected activity by filing a lawsuit and grievances. See ECF No. 24 at 10. Therefore, he satisfies the first prong of a *prima facie* case. However, Defendants argue that Plaintiff cannot satisfy the second or third prongs of a *prima facie* case for any retaliation claim.

### b. Adverse action – false misconduct

Defendants argue that because the allegedly false misconduct was dismissed without consequence, Plaintiff did not suffer an adverse action. ECF No. 24 at 12 (citing  Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011)).

In response, Plaintiff contends that his claim survives because a false misconduct, even if dismissed, "could" subject him to "the risk of significant sanctions." ECF No. 32 at 7 (citing Brown v. Crowley, 312 F.3d 782 (6th Cir. 2002)). In Brown, the United States Court of Appeals for the Sixth Circuit considered whether a false misconduct charge that did not result in additional discipline could support a retaliation claim. The Sixth Circuit held that even though the charge against the plaintiff was dismissed, its initial issuance presented a risk of future significant sanctions and thus could chill resort to the grievance process. Id. at 789. However, Brown conflicts with the Third Circuit's holding in Brightwell v. Lehman, *supra*. In Brightwell, the Third Circuit concluded that a dismissed misconduct "does not rise to the level of 'adverse action' because it would not be 'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Brightwell, 637 F.3d at 194 (quoting Allah v. Seiverling, 229 F.3d at 225, in turn quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000)); *cf.* Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir.2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." (citation omitted)).

Plaintiff's allegations make clear that the purportedly adverse action – declining support for parole – was based on several legitimate penological reasons unrelated to the dismissed misconduct. ECF No. 10 at 10. Thus, as in <u>Brightwell</u>, Plaintiff does not state a plausible claim that he suffered an "adverse action" from the issuance of  the allegedly false misconduct. It is recommended that the Court dismiss Plaintiff's retaliation claim based on the issuance of a false misconduct.

### c.  Causal link - parole recommendation

Plaintiff alleges, as he has in past litigation, that Defendants worked in concert to deny him parole in retaliation for filing a lawsuit and grievances against several Defendants and other DOC current and former officials. Defendants move to dismiss Plaintiff's retaliation claims as speculative, and because Plaintiff fails allege facts that make plausible his claim that retaliatory animus caused the denial of parole. ECF No. 24 at 13-14. Plaintiff responds briefly that his First Amendment retaliation claim should survive because he sufficiently alleges facts that Coulehan, Hurd, Wittman, Buzas, Swartz, and Zaken denied him support for parole and provided false information to the Parole Board "because of his filings." <u>Id.</u> Plaintiff also states that despite the allegations in his Complaint, he is not pursuing a separate conspiracy claim, but merely employing the term as "a theory."[6] ECF No. 32 at 7.

Plaintiff does not respond to Defendants' argument that he fails to state a retaliation claim against Defendants Cook, Darr, and the Parole Board members in relation to his application for parole, and therefore appears to concede that he fails to state a claim for relief against each of them. ECF No. 24 at 13, ECF No. 32 at 7.

---

[6] Based on Plaintiff's representation that he is not pursuing a conspiracy claim, the Court need not consider the Motion to Dismiss addressing this apparent claim.

Further, on the merits, Plaintiff's retaliation claims fail because his Complaint makes clear that parole was denied, as it was in 2021 and 2022, for reasons bearing no relationship to the alleged false misconduct or his institution-related litigation and grievances.

In Naranjo v. Ivicic, No. 21-72 (W.D. Pa.) (ECF Nos. 24 and 138), Plaintiff alleged in nearly identical fashion that he was denied parole in 2021 and 2022 because staff at SCI-Houtzdale provided a parole agent false information about his adjustment and programming needs in retaliation for filing litigation and grievances. Naranjo, 2023 WL 3571143, at *5 (W.D. Pa. Apr. 28, 2023). This Court recommended that the district court grant summary judgment in favor of the defendant SCI-Houtzdale prison employees because the evidence established Plaintiff would have been denied parole regardless of any protected activity. Id. at *7. The recommendation was adopted by the District Court, Naranjo v. Ivicic, 2023 WL 3569845, and the Third Circuit affirmed the grant of summary judgment, finding no error.

> With respect to the parole denial, the District Court noted that Naranjo was denied parole for a variety of legitimate penological reasons, "including his failure to participate in and complete institutional programs, level of risk to the community, failure to demonstrate motivation for success, and refusal to accept responsibility for offenses committed." Thus, the District Court concluded that, even if Naranjo was able to satisfy his prima facie claim, the Defendants had satisfied their Rauser burden and were entitled to summary judgment on this issue as well.

Naranjo v. Ivicic, 2024 WL 3534481, at *2. The Third Circuit "agree[d] with the District Court's conclusions for the reasons it presented." Id., at *3.

This case is at the Motion to Dismiss stage. However, in his Complaint, Plaintiff sets forth the Parole Board's reasons for denying parole in 2023. The reasons mirror the bases of parole decisions in 2021 and 2022, and do not rely exclusively on the lack of jail support or his institutional placement or conduct. As alleged in the Complaint, the Parole Board found that in addition to the level of risk to the community, Plaintiff failed to demonstrate motivation for

success, minimized the nature and circumstances of his offenses, and refused to accept responsibility for his crimes. ECF No. 10 at 10. Based on his own allegations, Plaintiff fails to state a plausible claim that his grievances and litigation resulted in adverse action because, as in his prior litigation, the Board based its decision on several factors unrelated to alleged retaliation by the DOC or Parole Board Defendants. Thus, it is recommended that the Court dismiss Plaintiff's First Amendment retaliation claims against all Defendants arising out of the failure to grant jail support for parole and for the denial of parole.

### 4.    Eighth Amendment Claims

In Count IV of the Complaint, Plaintiff alleges that his rights under the Eighth Amendment were violated in two respects: first, he was denied access to exercise equipment "to properly exercise" and, second, he was placed in "solitary confinement" and deprived social interaction, physical health, proper exercise, and environmental stimulation. ECF No. 10 at 20. He alleges that Defendants are aware of the substantial harm caused by solitary confinement and yet "act with deliberate indifference" to that risk of harm. Id.

In support of the Motion to Dismiss, Defendants argue that "placement in a restricted housing unit, without more, does not violate the Eighth Amendment." ECF No. 24 at 15 (citing Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997). And, as related to the MCU, Plaintiff's placement provided him with less restrictions than his prior housing in the RHU and does not violate the Eighth Amendment. Id. at 16.

The conditions of confinement related to segregated housing have been the subject of frequent litigation.

> In order to state an Eighth Amendment claim, a plaintiff must establish both that he has been denied "the minimal civilized measure of life's necessities" and that defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To violate the Eighth Amendment's prohibition of cruel and

unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions—considered alone constitutionally insufficient—may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (identifying the denial of basic human needs as "food, clothing, shelter, sanitation, medical care and personal safety").

In applying this test, the Supreme Court acknowledges that the Eighth Amendment does not mandate that prisons be free of discomfort. Hudson, 503 U.S. at 9. Placement in administrative segregation, alone, is insufficient to constitute cruel and unusual punishment. See Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981), cert. denied, 462 U.S. 1137 (1983) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment"). In assessing whether an inmate's placement in segregation violates the Eighth Amendment, courts must look to the "duration and conditions of segregated confinement" and the "touchstone is the health of the inmate." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded on other grounds by statute, Prison Litigation Reform Act, 42 U.S.C. § 1997, et seq.

Young v. Ferguson, No. 1:18-879, 2020 WL 1505683, at *6-7 (M.D. Pa. Mar. 30, 2020), aff'd, 830 F. App'x 375 (3d Cir. 2020).

Plaintiff's allegations and the docket of his criminal proceedings reflect that he was housed in the MCU for about eighteen months. Plaintiff alleges in boilerplate fashion that within the MCU, he was housed in "solitary confinement." Yet, Plaintiff also alleges that within the MCU, he could "interact with … the 5 inmates in his unit," and spend time watching TV in the unit dayroom. ECF No. 10 at 6, 7. He claims that he was charged with a misconduct for an incident that occurred "during a movie scene on the LB-dayroom television where there was Officer Henderson and inmate Amel Jones #E2-2128 from time to time talking to me until the dayroom was over." Id. at

9. Thus, Plaintiff was afforded "dayroom" privileges with other inmates on his unit and was permitted many of the same privileges as those in general population for personal property, commissary orders, and out-of-cell activities delivered in his housing unit. ECF No. 32-1 at 4. He was also permitted non-contact visits, and MCU library use. ECF No. 10 at 13. Thus, the totality of circumstances of the conditions of his confinement are not "objectively, sufficiently serious" so as to "result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. See also Batchelor v. Little, No. 22-1340, 2022 WL 16749039, at *9 (E.D. Pa. Nov. 7, 2022) (placement for four years on Restricted Release List did not pose a substantial risk of harm where inmate was permitted out of his cell for portions of each day, could have non-contact visits, could exercise for two hours per day, and shower four times per week).

Plaintiff also does not allege that any Defendant knew that his eighteen-month exposure to the conditions of confinement in the MCU – with out-of-cell privileges not afforded inmates on Restricted Release List, Disciplinary Custody, or Administrative Custody – posed a substantial risk of harm. Thus, even if Plaintiff could show that his conditions of confinement posed a substantial risk of harm, he fails to allege facts sufficient to establish that any Defendant acted with deliberate indifference by confining him in the MCU.

Plaintiff also fails to state a claim for the violation of his Eighth Amendment rights complaints related to the availability of exercise equipment. Plaintiff alleges that the lack of access to exercise equipment resulted in muscle weakness, joint pain, and "numerous other physical symptoms through his body." ECF No. 10 at 13. That said, he also alleges that he is permitted two hours of exercise each day in a Level-5 outdoor recreation yard. Id. at 6, 13. Plaintiff does not allege that he was diagnosed with a medical condition that required a prescribed treatment plan involving the use of exercise equipment over traditional body-weight exercise. Nor does he allege

that any Defendant knew he required the use of exercise equipment to address the physical symptoms he claims to suffer. Thus, Plaintiff has not alleged that any Defendant knew of and disregarded "an excessive risk to inmate health or safety" and thereby violated his constitutional rights. <u>Farmer</u>, 511 U.S. at 845-46.

For these reasons, Plaintiff's Eighth Amendment claims should be dismissed.

### 5.    Fourteenth Amendment Procedural Due Process – MCU Placement Claim

At Count V, Plaintiff alleges that his Fourteenth Amendment rights to liberty and procedural due process rights are violated by his placement in the MCU.[7] ECF No. 10 at 22-24. Naranjo contends that the duration and conditions of his confinement subject him to "atypical and significant hardship," that cannot be challenged at any time. <u>Id.</u>

Plaintiff pursued identical claims in an earlier action, and each claim was dismissed with prejudice. <u>Naranjo v. Little</u>, No. 22-1890 (ECF No. 54 at 21-23). The Court found that confinement in the MCU does "not present atypical or significant hardship such that his placement implicates any liberty interest." <u>Id.</u> (citing <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002). As to Plaintiff's procedural due process claim, the Court held "Plaintiff also does not plead facts showing that he was deprived of sufficient process. To the contrary, he alleges that he had a custody hearing before his transfer to SCI-Greene, and the MCU handbook provides that his placement will be reviewed by the PRC on at least an annual basis." <u>Id.</u> (citations omitted). Because Plaintiff presents no allegations warranting a different result here based on his placement in the same unit for a total

---

[7] Plaintiff purports to bring Fourteenth Amendment procedural due process claims on behalf of "MCU class members." ECF No. 10 ¶¶ 57, 60. However, <i>pro se</i> litigants who are not attorneys may not pursue claims on behalf of others, including by way of a class action. <u>See</u> <u>Hagan v. Rogers</u>, 570 F.3d 146, 158-59 (3d Cir. 2009) ("<i>pro se</i> litigants are generally not appropriate as class representatives"); <u>Lewis v. City of Trenton Police Dep't</u>, 175 F. App'x 552, 554 (3d Cir. 2006) (per curiam) ("Lewis, who is proceeding pro se, may not represent a putative class of prisoners."). Accordingly, claims on behalf of any other inmate should be dismissed with prejudice.

of eighteen months, it is recommended that Plaintiff's Fourteenth Amendment claims related to his confinement in the MCU be dismissed.

### 6.     Fourteenth Amendment – Substantive Due Process and Parole Claim

At Count VI, Plaintiff asserts a claim against the Pennsylvania Parole Board members for the violation of his substantive due process rights for denying him parole based on its reliance on false information and retaliatory animus for filing grievances and lawsuits against prison officials and staff. ECF No. 10 at 21-22.

The Fourteenth Amendment's due process clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

> With respect to parole determinations, the United States Court of Appeals for the Third Circuit has held that a parole board's decision can violate an inmate's substantive due process rights if it applies "standards that are divorced from the policy and purpose of parole" or other "impermissible criteria." Specifically, the specter of a substantive due process violation is raised only when "a parole board considers a factor that 'shocks the conscience.'" If, however, there is "some basis" for the parole board's decision, and that basis is not "constitutionally impermissible" or conscience shocking, a substantive due process challenge must fail. [Internal citations omitted].

Bressi v. Parole Bd., No. 1:21-CV-01265, 2022 WL 617117, at *2 (M.D. Pa. Mar. 2, 2022), aff'd, No. 22-1462, 2022 WL 17337570 (3d Cir. Nov. 30, 2022), cert. dismissed sub nom. Bressi v. Pennsylvania Parole Bd., 143 S. Ct. 2485 (2023), reconsideration denied, 143 S. Ct. 2655 (2023).

Plaintiff makes clear in the Complaint that the Parole Board considered several factors including the risk to the community, and assessed the credibility of Plaintiff's acceptance of responsibility, remorse, and motivation to successfully reenter society as part of its decision. ECF No. 10 at 10.  These factors, among others, have been found to be rationally related to the legitimate

penological objective of rehabilitation. Thus, a decision based on each factor does not shock the conscience. Id. (citing, Folk v. Att'y Gen. of Commonwealth of Pa., 425 F. Supp. 2d 663, 672-73 (W.D. Pa. 2006) (holding that acceptance of responsibility for criminal behavior is a legitimate parole consideration and does not violate an inmate's substantive due process rights); Goodman v. McVey, No. 1:10-CV-2403, 2010 WL 5789388, at *4-5 (M.D. Pa. Dec. 8, 2010) (finding Parole Board's decision, which included consideration of acceptance of responsibility, not "conscience shocking" and recommending dismissal of substantive due process claim), aff'd, 428 F. App'x 125 (3d Cir. 2011) (nonprecedential)).

It is recommended that the Court dismiss Plaintiff's Fourteenth Amendment substantive due process claim for the denial of parole.

### 9.    Substantive Due Process – MCU Privileges and Programming Claim

Plaintiff's substantive due process claims at Count VII are based on alleged unconstitutional conditions of confinement in the MCU. ECF No. 10 at 22. Accordingly, Plaintiff's substantive due process claims should be dismissed as redundant to his Eighth Amendment claim. See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 447-48 (3d Cir. 2020) (death row inmate's substantive due process claim based on prison officials' subjecting him to solitary confinement for 33 years challenged same conduct as his Eighth Amendment claim, and thus was barred under more-specific-provision rule); Willard v. Pennsylvania Soc. for the Prevention of Cruelty to Animals, 525 F. App'x 217, 219 n.4 (3d Cir. 2013 ) (affirming dismissal of substantive due process claim, pursuant to the "more-specific-provision" rule, where substantive due process claim sought to redress the same harm alleged in plaintiff's procedural due process claim).

### 10.    Equal Protection – MCU Privileges and Programming Claim

Plaintiff presents a claim that his Fourteenth Amendment rights to equal protection were violated because the privileges and programs available to MCU prisoners are different from those available to prisoners in general population. ECF No. 10 at 22-23. The details of this claim are identical in all material respects to his equal protection claim in Naranjo v. Little, No. 22-1890 (ECF No. 54 at 23-25) (claim asserted against Defendants Little, Bickell, and Zaken). But in this case, he asserts his claim against Defendants Harry (in lieu of former Secretary Little), Ferguson, Zaken, and Swartz. Plaintiff cites differences in unit access to the certain library materials, availability of in-person assistance with litigation, contact visits, religious and leisure activities, and drug and alcohol counseling. ECF No. 10 at 12, 22.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Att'y Gen. of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).

Plaintiff does not allege his equal protection claim based on race, religion, or national origin, and prisoners are not a protected class of individuals. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (holding that neither prisoners nor indigents are suspect classes). Thus, Plaintiff proceeds on a class of one theory.

According to the class of one theory, "a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (citing Vill. of Willowbrook v. Olech,

528 U.S. 562, 564 (2000)). "To state an equal-protection violation, [Plaintiff] must allege that 'he

has been arbitrarily treated differently from similarly situated inmates' in all relevant respects."

Hammond v. Zaken, No. 2:23-1151, 2024 WL 3593487, at *2 (W.D. Pa. July 31, 2024) (quoting

McKeithan v. Kerestes, No. 11-1441, 2014 WL 3734569, at *10 (M.D. Pa. July 28, 2014)).

> Plaintiff does not allege any facts for comparison to "similarly situated" inmates.

> …RHU inmates are not similarly situated to general population inmates. See Fogel v. Pierson, 435 F.3d 1252, 1260-61 (10th Cir. 2006) (finding administrative segregation inmates not similarly situated to general population inmates). Moreover, the difference in treatment is likely "reasonably related to legitimate penological interests," see Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) ….

Wilson v. Jin, 698 F. App'x 667, 672 (3d Cir. 2017). Plaintiff's allegations make clear that he is

housed in a segregated unit and in that respect, he provides no basis for a claim that he is treated

differently than other similarly situated inmates. Accordingly, Plaintiff cannot state an equal

protection claim and it is recommended that the Court grant the Motion to Dismiss as to Plaintiff's

equal protection claim.

### 10. Violation of DOC Policies

Defendants move to dismiss Plaintiff's apparent claims related to the violation of DOC

policies. ECF No. 24 at 20-22. Defendants contend that DOC's adoption of policies and practices

does not create rights or a constitutionally protected interest. Thus, the violation of any policy or

procedure does not state a claim. Id.

In his Brief, Plaintiff concedes that the cited DOC policies do not create rights, but "may

be evidence" in support of his other claims. ECF No. 32 at 13. Therefore, the violation of DOC

policies does not state a claim.

**D.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 23 be granted as to all claims against all Defendants.

"If a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Because it cannot be said that amendment would be futile, it is recommended that the Court grant Plaintiff 30 days to file an Amended Complaint to correct the deficiencies identified in this Report.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties may file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may respond to the objections within 14 days in accordance with Local Civil Rule 72.D.2.

Dated: October 31, 2024                                  Respectfully submitted,

                                                         MAUREEN P. KELLY
                                                         UNITED STATES MAGISTRATE JUDGE


cc:    Christy Criswell Wiegand
       United States District Judge

       Isaac Naranjo
       FJ 4369
       SCI Greene
       169 Progress Drive
       Waynesburg, PA 15370

All counsel of record by CM/ECF